Jack Silver, Esq. SB # 160575
Email: lhm28843@sbcglobal.net
LAW OFFICE OF JACK SILVER
Jerry Bernhaut, Esq. SB # 206264
Email: j3bernhaut@gmail.com
Post Office Box 5469
Santa Rosa, CA 95402-5469
Tel    (707) 528-8175
Fax.   (707) 528-8675

Attorneys for Plaintiff
CALIFORNIA RIVER WATCH

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA RIVER WATCH, an IRC Section 501(c)(3) non-profit, public benefit corporation, <br><br> Plaintiff <br> v. <br><br> CITY OF SANTA ROSA, <br><br> Defendant. <br> _____/ | CASE NO. 3:15-cv-02349 <br><br> **COMPLAINT FOR INJUNCTIVE RELIEF, CIVIL PENALTIES, AND DECLARATORY RELIEF** <br> **(Environmental - Clean Water Act - 33 U.S.C. § 1251, *et seq*)** |

CALIFORNIA RIVER WATCH ("RIVER WATCH "), an Internal Revenue Code Section 501(c)(3) non-profit, public benefit corporation, by and through its counsel, hereby alleges:

I.      **NATURE OF THE CASE**

1.      This is a citizens' suit for relief brought by RIVER WATCH under the Federal Water Pollution Control Act, also known as the Clean Water Act ( "CWA"), 33 U.S.C. § 1251 et seq., specifically the citizen's suit provision under CWA § 505, 33 U.S.C. §1365 to enforce CWA § 301, 33 U.S.C. § 1311, and CWA § 402, 33 U.S.C. § 1342, in order to prevent Defendant CITY OF SANTA ROSA ("SANTA ROSA") from repeated and ongoing violations of the CWA. These violations are detailed in the Notice of Violations and Intent to File Suit dated January 21, 2015 ("CWA NOTICE") made part of this pleading and attached hereto as **EXHIBIT A.**

2.  SANTA ROSA owns and operates a Subregional Water Reclamation System, including a wastewater treatment plant located at 4300 Llano Road Santa Rosa, California. 95407.

3.  RIVER WATCH contends SANTA ROSA is routinely violating the CWA by exceeding the effluent discharge standards or limitations in the National Pollutant Discharge Elimination System ("NPDES") Permits under which the Subregional Water Reclamation System and wastewater treatment plant are regulated, specifically, RWQCB Order No. R1-2006-0045, NPDES No. CA0022764 (Waste Discharge Requirements and Master Reclamation Permit for the Santa Rosa Subregional Water Reclamation System, Sonoma County), as amended by Order No. R1-2008-0091, and replaced by Order No. R1-2013-0001.

4.  RIVER WATCH contends SANTA ROSA is also violating the Regional Water Quality Control Board, North Coast Region ("RWQCB") Water Quality Control Plan ("Basin Plan"), Environmental Protection Agency ("EPA") regulations codified in the Code of Federal Regulations, and toxics standards promulgated by the State Water Resources Control Board, in the course of SANTA ROSA's operation of the Subregional Water Reclamation System and its wastewater treatment plant as described in the CWA NOTICE.

5.  RIVER WATCH contends SANTA ROSA illegally discharges pollutants to Santa Rosa Creek and the Laguna de Santa Rosa both of which are habitat for threatened or endangered species as those terms are defined by the California EPA and the United States EPA.

6.  RIVER WATCH seeks declaratory relief, injunctive relief to prohibit future violations, the imposition of civil penalties, and other relief for SANTA ROSA's violations of the CWA as alleged in this Complaint.

## II.  PARTIES TO THE ACTION

7.  Plaintiff CALIFORNIA RIVER WATCH is an Internal Revenue Code § 501(c)(3) non-profit, public benefit corporation organized under the laws of the State of California, with headquarters located in Sebastopol, California and offices in Los Angeles, California. RIVER WATCH's southern California mailing address is 7401 Crenshaw Boulevard, #422, Los

Angeles, California 90043. The specific purpose of RIVER WATCH is to protect, enhance and help restore surface and ground waters of California including rivers, creeks, streams, wetlands, vernal pools, aquifers and associated environs, biota, flora and fauna; and, to educate the public concerning environmental issues associated with these environs.

8.      Members of RIVER WATCH live in the City of Santa Rosa and nearby to the waters and watersheds affected by SANTA ROSA's illegal discharges as alleged herein.  Said members have interests in the waters and watersheds identified in this Complaint, which interests are or will be adversely affected by SANTA ROSA's violations of the CWA.  Said members use the effected waters and watershed areas for domestic water, recreation, sports, fishing, swimming, hiking, photography, nature walks, and the like.

9.      RIVER WATCH is informed and believes and on such information and belief alleges that Defendant CITY OF SANTA ROSA is now, and at all times relevant to this Complaint was, a Municipality formed under the laws of the State of California, with administrative offices  located at 100 Santa Rosa Avenue, Santa Rosa, CA 95404.

## III.    JURISDICTIONAL ALLEGATIONS

10.     Under 33 U.S.C. § 1251(e), Congress declared its goals and policies with regard to public participation in the enforcement of the CWA.  33 U.S.C. § 1251(e) provides, in pertinent part:

> "Public participation in the development, revision, and enforcement of any regulation, standard, effluent limitation, plan or program established by the Administrator or any State under this chapter shall be provided for, encouraged, and assisted by the Administrator and the States. "

11.     Subject matter jurisdiction is conferred upon this Court by Section 505(a)(1) of the CWA, 33 U.S.C. § 1365(a)(1), which states in part,

> "any citizen may commence a civil action on his own behalf against any person . . . .who is alleged to be in violation of (A) an effluent standard or limitation . . . . or (B) an order issued by the Administrator or a State with respect to such a standard or limitation." For purposes of CWA § 505(a)(1), 33 U.S.C. 1365(a)(1) the term "citizen" means, "a person or persons having

an interest which is or may be adversely affected."[1]

12.     Members and supporters of RIVER WATCH reside in the vicinity of, enjoin visiting the area, derive livelihoods from, own property near, and/or recreate on, in or near and/or otherwise use, enjoy and benefit from the waterways and associated natural resources into which SANTA ROSA discharges pollutants, or by which SANTA ROSA's operations of the Subregional Water Reclamation System and wastewater treatment plant adversely affect said members' interests, in violation of CWA §§  301(a) and 402, 33 U.S.C.§§ 1311(a) and 1342. The health, economic, recreational, aesthetic and environmental interests of RIVER WATCH and its members may be, have been, are being, and will continue to be adversely affected by SANTA ROSA's unlawful violations of the CWA as alleged in this Complaint.  RIVER WATCH and its members contend there exists an injury in fact to them, causation of that injury by SANTA ROSA's complained of conduct, and a likelihood that the requested relief will redress that injury.

13.     Pursuant to CWA § 505(b)(1)(A), 33 U.S.C.§1365(b)(1)(A), notice of the CWA violations alleged in this Complaint was given more than sixty (60) days prior to commencement of this lawsuit, to: (a) SANTA ROSA, (b) the United States EPA, Federal and Regional, (c) the State of California Water Resources Control Board, and (d) the RWQCB.

14.     Pursuant to CWA § 505(c)(3), 33 U.S.C. § 1365(c)(3), a copy of this Complaint has been served on the United States Attorney General and the Administrator of the Federal EPA.

15.     Pursuant to CWA § 505(c)(1), 33 U.S.C. § 1365(c)(1), venue lies in this District as the Subregional Water Reclamation System and wastewater treatment plant and the sites where illegal discharges occurred, which are the source of the violations complained of in this action, are located within this District.

## IV.   GENERAL ALLEGATIONS

16.     RIVER WATCH incorporates by reference all the foregoing including the CWA

---

[1] See CWA § 505(g), 33 U.S.C. 1365(g). "For purposes of this section [CWA § 505] the term 'citizen' means a person or persons having an interest which is or may be adversely affected."

NOTICE as though the same were separately set forth herein.

17.     SANTA ROSA's Subregional Water Reclamation System, including its wastewater treatment plant consists of an extensive system of wastewater storage ponds and associated sewage collection system.  SANTA ROSA has a history of exceeding effluent limits in its NPDES Permits for Total Coliform and Total Nitrogen.

18.     The Laguna de Santa Rosa is CWA § 303(d) listed as impaired for nutrients including nitrate.  SANTA ROSA is the single largest contributing source of nutrients to the Laguna de Santa Rosa.  By discharging a prohibited quantity of nitrogenous compounds (measured as total nitrogen), SANTA ROSA is causing contamination and a nuisance as defined by Section 13050 of the California Water Code.

19.     Beneficial uses of the Laguna de Santa Rosa as defined by the RWQCB's Basin Plan and SANTA ROSA's NPDES Permits include water contact recreation, warm and cold freshwater habitat, subsistence fishing, commercial and sport fishing, preservation of rare, threatened or endangered species, migration of aquatic organisms, spawning, reproduction, and/or early development, and wetland habitat.  Nitrogen compounds are biostimulants. The nitrogen discharged by SANTA ROSA causes a nutrient load which exceeds the budget for the Laguna de Santa Rosa.  This eutrophication results in algal blooms and the proliferation of surface plants.  The algae and surface plants reduce, and in some cases destroy, the quality of the habitat for salmonids.  The surface plants are known to harbor mosquitos, including species which carry disease. One of the problems with nitrogen compounds is that they accumulate in bottom deposits, thus when the bottom deposits are disturbed it causes prohibited amounts of nitrogenous compounds to be discharged into the Laguna de Santa Rosa. In some cases, the discharges by SANTA ROSA actually cause resuspension of nitrogen compounds.  Each and every day SANTA ROSA discharges, these discharges violate provisions of its NPDES Permits as detailed below and in the CWA NOTICE.

20.     SANTA ROSA has a history of discharging waste to receiving waters during the non-discharge season, in violation of discharge prohibitions in its NPDES Permits, both from its storage ponds and runoff from reclamation sites where SANTA ROSA's reclaimed

Complaint

wastewater is applied for irrigation use.  As the ponds leak continually, SANTA ROSA is discharging during the discharge prohibition period of May 15 through September 30. Therefore, SANTA ROSA is violating its permit conditions each and every day during the non-discharge season that the ponds contain wastewater.

21.    SANTA ROSA maintains an extensive reuse program which includes approximately 6,236 acres of urban and agricultural land that is irrigated with treated wastewater.  Many of these acres lie adjacent to waters of the United States including the Laguna de Santa Rosa. SANTA ROSA has a history of discharges of wastewater from its reclamation sites during the discharge prohibition period of May 15 through September 30.  As an example, as reported in the California Integrated Water Quality System's ("CIWQS") Public Self Monitoring reports, on July 23, 2013, a recycled water line split, discharging approximately 17,000 gallons of recycled wastewater into Santa Rosa Creek. On July 8, 2013, over-irrigation at the Christiansen South property resulted in the discharge of approximately 18,000 gallons of recycled wastewater into Irwin Creek, a tributary of the Laguna de Santa Rosa.

22.    SANTA ROSA has a history of violations of receiving water limitations in its NPDES Permits, as detailed below and in the CWA NOTICE. The majority of its permitted discharges to surface waters occur from its various ponds.  In comparison to the waters into which they discharge, the ponds are relatively stagnate, lower in dissolved oxygen ("DO"), higher in temperature, and varying in pH and turbidity.  The RWQCB does not allow for mixing zones, therefore the discharges must not lower the DO, raise the temperature or turbidity, or alter the pH of the receiving waters more than a specified amount at the point of discharge.  In addition to specific numeric limitations, SANTA ROSA's NPDES Permits contain narrative standards (Order No. R1-2006-0045 Section V. Receiving Water Limitations, A.4 - 10; Order No. R1-2013-0001, Section V. Receiving Water Limitations, A.1 - A.17). By law it is SANTA ROSA's burden to prove it is in compliance with the conditions of its NPDES Permits. Therefore, each day SANTA ROSA discharges, it must have the data to prove it is in compliance with the requirements of its NPDES Permits.  To the extent that SANTA ROSA fails to possess such data, it is in violation of the CWA for failure to monitor and/or report.  In an examination

Complaint

of records filed by SANTA ROSA, River Watch could not find any evidence of compliance with the above referenced Receiving Water Limitations, nor with numeric limitations for a majority of the ponds from which SANTA ROSA discharges to receiving waters.   In addition to violations for failure to monitor and/or report, each day SANTA ROSA discharges from its ponds, it is in violation of the above referenced provisions in its NPDES Permits and therefore in violation of the  CWA.

23.     SANTA ROSA has a history of unpermitted sewer system overflows ("SSOs") from its sewage collection system, in violation of provisions in its NPDES Permits as  detailed below and in the CWA NOTICE. SANTA ROSA's collection system has historically experienced high inflow and infiltration ("I/I") of rain water and groundwater during wet weather.  Forty two percent (42%) of its sewer lines were constructed prior to 1979.  Structural defects which allow I/I into the sewer lines result in a buildup of pressure which causes SSOs. Overflows caused by blockages and I/I result in the discharge of raw sewage into gutters, canals and storm drains which are connected to adjacent surface waters – all waters of the United States.  As recorded in CIWQS Public SSO Reports, SANTA ROSA's collection system has experienced at least 17 SSOs between February 28, 2010 and February 22, 2015, with a combined volume of at least 53,530 gallons – 36,826 gallons of which were reported as having reached surface waters.  As an example, on February 1, 2014, a spill occurred at 3540 Unocal Place.  The total estimated volume of the spill was 15,580 gallons.  Of that amount, 15,482 gallons were estimated to have reached surface water impacting Nagasawa Creek which feeds into Piner Creek, a tributary to Santa Rosa Creek.  On October 31, 2012, 13,800 gallons spilled at Summerfield Road and San Antonio Drive, 12,970 of which were unrecovered, impacting Sierra Park Creek, tributary to the Santa Rosa Creek.  The Unocal Place spill was noticed and responded to 2 days after it began. The Summerfield Road spill was noticed and responded to on the day after it began.  Given the extensive time lag, RIVER WATCH believes SANTA ROSA has grossly underestimated the volume of its discharges. The EPA's "Report to Congress on the Impacts of SSOs" identifies SSOs as a major source of microbial pathogens and oxygen depleting substances.  Numerous critical habitat areas exist within the areas of SANTA ROSA's

SSOs.  Santa Rosa Creek is relied upon by endangered coho salmon and threatened steelhead trout. The Laguna de Santa Rosa is the most biologically diverse part of Sonoma County, and home to a number of rare and endangered species, including the California tiger salamander and California freshwater shrimp, as well as coho salmon and steelhead trout. There is no record of SANTA ROSA performing any analysis of the impacts of its SSOs on critical habitat of protected species under the ESA, nor any evaluation of the measures needed to restore water bodies designated as critical habitat from the impacts of SSOs.

24.     SANTA ROSA has a history of unpermitted sewer system subsurface discharges caused by underground exfiltration from its sewage collection system, in violation of provisions in its NPDES Permits as  detailed below and in the CWA NOTICE.  Underground discharges from which untreated sewage is discharged from SANTA ROSA's collection system prior to reaching the wastewater treatment plant are alleged to have been continuous throughout the period from January 1, 2010 through January 1, 2015. Exfiltration caused by pipeline cracks and other structural defects in the collection system result in discharges to adjacent surface waters via underground hydrological connections. SANTA ROSA's internal reports indicate discharges to surface waters not reported to the CIWQS.  Because the entire collection system has not been adequately inspected by means of closed circuit television ("CCTV"), SANTA ROSA lacks insufficient information concerning the condition or the extent of exfiltration for a significant portion of the collection system.  Some sections of the system are old and in need of repair. Untreated sewage is discharged from cracks, displaced joints, eroded segments, etc., into ground water hydrologically connected to surface waters.  Evidence indicates extensive exfiltration from lines located within 200 feet of a surface water.

25.     RIVER WATCH alleges that such discharges are continuous wherever aging, damaged, and/or structurally defective sewer lines in SANTA ROSA's collection system are located adjacent to surface waters, including Santa Rosa Creek and the Laguna de Santa Rosa, tributaries of the Russian River, and waters of the United States under the CWA.  Surface waters and groundwater become contaminated with fecal coliform, exposing people to pathogens. Studies tracing human markers specific to the human digestive system in surface waters adjacent

1   to defective sewer lines in other systems have verified the contamination of the adjacent waters

2   with untreated sewage. [2]   Evidence of exfiltration can be found in mass balance data,  I/I data,

3   video inspection, and tests of waterways adjacent to sewer lines for nutrients, human pathogens

4   and other human markers such as caffeine.  Exfiltration from SANTA ROSA's collection system

5   is a daily occurrence and a violation of SANTA ROSA's NPDES permits and the CWA.

6      26.     RIVER WATCH alleges that both surface and underground SSOs have ongoing

7   harmful effects on critical habitat in and around Santa Rosa Creek and the Laguna De Santa

8   Rosa, adjacent to SANTA ROSA's sewer lines.

9      27.     SANTA ROSA's NPDES Permits prohibit the discharge of wastes that lead to the

10   creation of a "nuisance" as defined under the California Water Code.  The term "nuisance" is

11   defined in California Water Code § 13050(m) as anything which meets all of the following

12   requirements: 1) "is injurious to health, or is indecent or offensive to the senses . . . so as to

13   interfere with the comfortable enjoyment of life or property", 2) "affects at the same time an

14   entire community or neighborhood, or any considerable number of persons, although the extent

15   of the annoyance or damage inflicted upon individuals may be unequal"; and, 3)  "occurs during,

16   or as a result of, the treatment or disposal of wastes."

17      28.     Santa Rosa Creek and the Laguna de Santa Rosa have many beneficial uses as

18   defined in the RWQCB's Basin Plan.  SSOs from SANTA ROSA reaching Santa Rosa Creek,

19   the Laguna de Santa Rosa, or their tributaries, cause prohibited pollution by unreasonably

20   affecting the beneficial uses of these waters.  SANTA ROSA is also required by its NPDES

21   Permits to comply with narrative standards as set forth in the Basin Plan, used when testing by

22   numeric standards would be inadequate or impractical. RIVER WATCH has found nothing in

23   the public record to demonstrate that SANTA ROSA has monitored for and complied with these

24   narrative standards. RIVER WATCH is understandably concerned regarding the effects of both

25   surface and underground SSOs on critical habitat in and around Santa Rosa Creek and the

26

27      [2] *See* Report of Human Marker Study issued July of 2008 conducted by Dr. Michael L. Johnson, U.C. Davis water quality expert, performed for the City of Ukiah, finding the presence of human derived bacteria in two creeks adjacent to defective sewer lines.

28

Laguna de Santa Rosa.

29.     All illegal discharges and activities complained of in this Complaint occur in the waterways named in the CWA NOTICE and in this Complaint, all of which are waters of the United States, and at the locations identified in detail in the CWA NOTICE and in this Complaint or in the records of SANTA ROSA.

## V.     STATUTORY AND REGULATORY BACKGROUND

30.     CWA § 301(a), 33 U.S.C. § 1311(a), prohibits the discharge of pollutants from a point source to navigable waters of the United States, or activities not authorized by, or in violation of an effluent standard or limitation or an order issued by the EPA or a State with respect to such a standard or limitation including a NPDES permit issued pursuant to CWA § 402, 33 U.S.C. § 1342. Additional sets of regulations are set forth in the Basin Plan, California Toxics Rule, the Code of Federal Regulations and other regulations promulgated by the EPA and the State Water Resources Control Board.  Sewage is specifically identified in the CWA as a pollutant.  The discharge outfalls, ponds, and sewer lines owned and operated by SANTA ROSA and irrigation sites where SANTA ROSA's reclaimed wastewater is applied, are point sources under the CWA.

31.     The affected waterways identified in this Complaint and in the CWA NOTICE are navigable waters of the United States within the meaning of CWA § 502(7), 33 U.S.C. § 1362(7).

32.     The CWA provides that authority to administer the NPDES permitting system in any given state or region can be delegated by the EPA to a state or to a regional regulatory agency, provided that the applicable state or regional regulatory scheme under which the local agency operates satisfies certain criteria (*see* 33 U.S.C. § 1342(b)).  In California, the EPA has granted authorization to a state regulatory apparatus comprised of the State Water Resources Control Board and several subsidiary regional water quality control boards to issue NPDES permits. The entity responsible for issuing NPDES permits and otherwise regulating SANTA ROSA's operations of the Subregional Water Reclamation System, including the wastewater treatment plant, extensive system of wastewater storage ponds and associated sewage collection

system is the RWQCB.

33.    SANTA ROSA'S Subregional Water Reclamation System, including the wastewater treatment plant, extensive system of wastewater storage ponds and associated sewage collection  are regulated under RWQCB Order No. R1-2006-0045, NPDES No. CA0022764 (Waste Discharge Requirements and Master Reclamation Permit for the Santa Rosa Subregional Water Reclamation System, Sonoma County), as amended by Order No. R1-2008-0091, and replaced by Order No. R1-2013-0001.  RIVER WATCH alleges SANTA ROSA has committed numerous violations of its NPDES Permits, as detailed herein and in the CWA NOTICE.  All violations of a duly authorized NPDES Permit are a violation of the CWA.

34.    The Code of Federal Regulations Title 40 § 122.41 (40 CFR § 122.41) includes conditions, or provisions, that apply to all NPDES. Additional provisions applicable to NPDES permits are found at 40 CFR § 122.42.  SANTA ROSA must comply with all of the provisions of its NPDES Permits. Pursuant to 40 CFR § 122.41, any permit noncompliance constitutes a violation of the CWA.

## VI.    VIOLATIONS

35.    RIVER WATCH alleges that SANTA ROSA's violations as detailed herein and in the CWA NOTICE, are violations of CWA § 301(a), 33 U.S.C. § 1311(a) and consist of the following: Violations of Order No. R1-2006-0045, NPDES No. CA0022764 and Order No. R1-2013-0001 including:

a.    Discharges of  treated effluent exceeding effluent limits for Total Coliform and Total Nitrogen;

b.    Discharges of waste to receiving waters during the non-discharge season; and,

c.    Discharges to receiving waters in violations of receiving water limitations.

36.    The enumerated violations are detailed in the CWA NOTICE, incorporated herein by reference, and below, designating the section of the CWA violated by the described activity.

37.    The location of the violations are the discharges points as described herein and in the CWA NOTICE, incorporated herein by reference, as well as SANTA ROSA's self monitoring reports and SSO records of SANTA ROSA.

38.     The violations are established in RWQCB Files for SANTA ROSA as well as in studies conducted by SANTA ROSA in compliance with orders from regulatory agencies.

## VII.   CLAIMS FOR RELIEF

### A.     FIRST CLAIM FOR RELIEF

**Pursuant to CWA § 505(a)(1)(B), 33 U.S.C. 1365(a)(1)(B) - Violation of NPDES No. CA0022764 - Effluent Limit for Total Coliform**

39.     RIVER WATCH  realleges and incorporates by reference the allegations of Paragraphs 1 though 38 above including the CWA NOTICE as though fully set forth herein. RIVER WATCH is informed and believes and based upon such information and belief alleges as follows:

40.     SANTA ROSA has violated and continues to violate the CWA as evidenced by the discharges of pollutants (Total Coliform) exceeding effluent limits, from discharges points 003, 006A, 006B, 012A, 012B, 014, 015, 001, and 002.  RIVER WATCH contends that from January 1, 2010 through January 1, 2015, SANTA ROSA experienced 20 effluent discharges exceeding the NPDES Permit limit for Total Coliform, in violation of the following:

a.      Order No. R1-2006-0045, Effluent Limitation IV. A. 1.b; and,

b.      Order No. R1-2013-0001,  Effluent Limitation IV.1. b.

### B.     SECOND CLAIM FOR RELIEF

**Pursuant to CWA § 505(a)(1)(B), 33 U.S.C. 1365(a)(1)(B) - Violation of NPDES No. CA0022764 - Effluent Limit for Total Nitrogen**

41.     RIVER WATCH  realleges and incorporates by reference the allegations of Paragraphs 1 though 38 above including the CWA NOTICE as though fully set forth herein. RIVER WATCH is informed and believes and based upon such information and belief alleges as follows:

42.     SANTA ROSA has violated and continues to violate the CWA as evidenced by the discharges of pollutants (Total Nitrogen) exceeding effluent limits, from discharges points 003, 006A, 006B, 012A, 012B, 014, 015, 001, and 002.  RIVER WATCH contends that from January 1, 2010 through January 1, 2015, SANTA ROSA experienced 260 effluent discharges

exceeding the NPDES Permit limit for Total Nitrogen, in violation of the following:

    a.    Order No. R1-2006-0045, IV. Effluent Limitations and Discharge Specifications, A. Effluent Limitations, f. Effluent Limitations for Protection of Human Health, Table 8, Average Monthly concentration of Nitrate not to exceed 10 mg/L; and,

    b.    Order No. R1-2013-0001, IV. Effluent Limitations and Discharge Specifications, A. Effluent Limitations, 2. Final Effluent Limitations - Water Quality-Based Effluent Limitations, b.ii, Effluent Limitation for Total Nitrogen., "The average monthly concentration of total nitrogen shall not exceed 10.6 mg/L." .

**C.    THIRD CLAIM FOR RELIEF**

**Pursuant to CWA § 505(a)(1)(B), 33 U.S.C. 1365(a)(1)(B) - Violation of NPDES No. CA0022764 - Prohibition Against Discharging During Non-discharge Season**

43.    RIVER WATCH  realleges and incorporates by reference the allegations of Paragraphs 1 though 38 above including the CWA NOTICE as though fully set forth herein. RIVER WATCH is informed and believes and based upon such information and belief alleges as follows:

44.    SANTA ROSA has violated and continues to violate the CWA as evidenced by its unpermitted discharges during the non-discharge season from discharges points including 003, 006A, 006B, 012A, 012B, and 014, ( Santa Rosa's storage ponds) and reclamation sites where runoff has occurred, as recorded in records of the RWQCB and SANTA ROSA.  RIVER WATCH contends that from January 1, 2010 through January 1, 2015, SANTA ROSA experienced 155 discharges of waste to receiving waters during the non-discharge season in violation of the following:

    a.    Order No. R1-2006-0045, Discharge Prohibition III. A: "The discharge of any waste not disclosed by the Discharger or not within the reasonable contemplation of the Regional Water Board is prohibited.";

    b.    Order No. R1-2006-0045, Discharge Prohibition III. B: "Creation of (a) pollution, contamination, or nuisance, as defined by CWC Section 13050 is prohibited.";

    c.    Order No. R1-2006-0045, Discharge Prohibition III. I: "The discharge of

wastewater effluent from the WWTF to the Russian River or its tributaries is prohibited during the period (of) May 15 through September 30 of each year.";

d.  Order No. R1-2006-0045,  Attachment G - Water Reclamation Requirements and Provisions, B. Water Reclamation Requirements, 2. "The use of recycled water shall not create a condition of pollution or nuisance as defined in CWC Section 13050(m).";

e.  Order No. R1-2006-0045, Attachment G - Water Reclamation Requirements and Provisions, B. Water Reclamation Requirements, 6. "Recycled water shall not be allowed to escape the recycled use area(s) in the form of surface runoff. [CCR Title 22, Section 60310(e)].";

f.  Order No. R1-2013-0001, Discharge Prohibition III. A: "The discharge of any waste not disclosed by the Permittee or not within the reasonable contemplation of the Regional Water Board is prohibited.";

g.  Order No. R1-2013-0001, Discharge Prohibition III. B: "Creation of pollution, contamination, or nuisance, as defined by section 13050 of the California Water Code (Water  Code) is prohibited.";

h.  Order  No.  R1-2013-0001,  Discharge  Prohibition  III.  I:  "The  discharge  of wastewater effluent from the Subregional System to the Russian River or its tributaries is prohibited during the period from May 15 through September 30 of each year." ;

i.  Order No. R1-2013-0001, Attachment G - Water Reclamation Requirements and Provisions, B. Water Reclamation Requirements, 2. "The use of recycled water shall not create a condition of pollution or nuisance as defined in Water Code section 13050(m)."; and,

j.  Order No. R1-2013-0001, Attachment G - Water Reclamation Requirements and Provisions, B. Water Reclamation Requirements, 11. "Recycled water shall not be allowed to escape the recycled use area(s) in the form of surface runoff. [CCR Title 22, Section 60310(e)  However, incidental runoff of recycled water, such

as unintended, minimal over-spray from sprinklers that escapes the recycled water use area, or accidental breakage of a sprinkler head on a properly maintained irrigation system, is not a violation of this Order." .

**D.    FOURTH CLAIM FOR RELIEF**

**Pursuant to CWA § 505(a)(1)(B), 33 U.S.C. 1365(a)(1)(B) – Violation of NPDES No. CA0022764 - Violation of Receiving Water Limitations**

45.    RIVER WATCH  realleges and incorporates by reference the allegations of Paragraphs 1 though 38 above including the CWA NOTICE as though fully set forth herein. RIVER WATCH.

46.    SANTA ROSA has violated and continues to violate the CWA as evidenced by its  discharges in violation of receiving water limitations.  The RWQCB does not allow for mixing zones, therefore the discharges must not lower the DO, raise the temperature or turbidity, or alter the pH of the receiving waters more than a specified amount at the point of discharge. In addition to specific numeric limitations, SANTA ROSA's NPDES Permits contain narrative standards.  RIVER WATCH contends that from January 1, 2010 through January 1, 2015, SANTA ROSA experienced 1300 discharges from discharges points 003, 006A, 006B, 012A, 012B, and 014, (Santa Rosa's storage ponds) in violation of the following:

a.    Order No. R1-2006-0045, V. Receiving Water Limitations, A. Surface Water Limitations, A.1 - A.14; and,

b.    Order No. R1-2013-0001, V. Receiving Water Limitations, A. Surface Water Limitations, A.1 - A.17.

**E.    FIFTH CLAIM FOR RELIEF**

**Pursuant to CWA § 505(a)(1)(B), 33 U.S.C. 1365(a)(1)(B) – Violation of NPDES No. CA0022764 - Collection System Unpermitted Subsurface Discharges**

47.    RIVER WATCH  realleges and incorporates by reference the allegations of Paragraphs 1 though 38 above including the CWA NOTICE as though fully set forth herein. RIVER WATCH is informed and believes and based upon such information and belief alleges as follows:

48.     SANTA ROSA has violated and continues to violate the CWA as evidenced by its wastewater collection system subsurface discharges of pollutants (raw sewage) from a point source (the sewer lines) caused by underground exfiltration.  RIVER WATCH contends that from January 1, 2010 through January 1, 2015, SANTA ROSA experienced 1825 subsurface discharges from its sewer lines, which are point sources under the CWA, in violation of the following:

a.     Order No. R1-2006-0045, Discharge Prohibition III. A: "The discharge of any waste not disclosed by the Discharger or not within the reasonable contemplation of the Regional Water Board is prohibited.";

b.     Order No. R1-2006-0045, Discharge Prohibition III B: "Creation of (a) pollution, contamination, or nuisance, as defined by CWC Section 13050 is prohibited.";

c.     Order No. R1-2006-0045, Discharge Prohibition III D: "The discharge or reclamation of untreated or partially treated waste (receiving a lower level of treatment than described in Section II.A of the Fact Sheet) from anywhere within the collection, treatment, or disposal facility is prohibited, except as provided for in Prohibition III.E and in Attachment D, Standard Provision G (Bypass Provision).";

d.     Order No. R1-2006-0045, Discharge Prohibition III. E: "Any sanitary sewer overflow (SSO) that results in a discharge of untreated or partially treated wastewater to (a) waters of the State, (b) groundwater, or (c) land that creates a pollution, contamination, or nuisance as defined in CWC section 13050(m) is prohibited.";

e.     Order No. R1-2006-0045, Discharge Prohibition III. G: "The discharge of waste at any point not described in Finding II.B or authorized by any State Water Board or other Regional Water Board permit is prohibited.";

f.     Order No. R1-2013-0001, Discharge Prohibition III. A: "The discharge of any waste not disclosed by the Permittee or not within the reasonable contemplation of the Regional Water Board is prohibited.";

g.     Order No. R1-2013-0001, Discharge Prohibition III. B: "Creation of pollution, contamination, or nuisance, as defined by section 13050 of the California Water Code (Water Code) is prohibited.";

h.     Order No. R1-2013-0001, Discharge Prohibition III. D: "The discharge or reclamation use of untreated or partially treated waste (receiving a lower level of treatment than described in section II.A of the Fact Sheet) from anywhere within the collection, treatment, or disposal systems is prohibited, except as provided for in section IV.C.2 (Reclamation Specifications) and in Attachment D, Standard Provisions G (Bypass) and H (Upset).";

i.     Order No. R1-2013-0001, Discharge Prohibition III. E: "Any sanitary sewer overflow (SSO) that results in a discharge of untreated or partially treated wastewater to (a) waters of the State or (b) land that creates pollution, contamination, or nuisance, as defined in Water Code section 13050(m) is prohibited."; and,

j.     Order No. R1-2013-0001, Discharge Prohibition III. G: "The discharge of waste at any point not described in Finding II.B of the Fact Sheet or authorized by a permit issued by the State Water Resources Control Board (State Water Board) or another Regional Water Board is prohibited, except for use for fire suppression.".

**F.     SIXTH CLAIM FOR RELIEF**

**Pursuant to CWA § 505(a)(1)(B), 33 U.S.C. 1365(a)(1)(B) – Violation of NPDES No.**

**CA0022764 - Collection System Unpermitted Surface Discharges**

49.     RIVER WATCH realleges and incorporates by reference the allegations of Paragraphs 1 though 38 above including the CWA NOTICE as though fully set forth herein. RIVER WATCH is informed and believes and based upon such information and belief alleges as follows:

50.     SANTA ROSA has violated and continues to violate the CWA as evidenced by its wastewater collection system surface discharges of pollutants (raw sewage) from a point source (the sewer lines) caused by SSOs. RIVER WATCH contends that from January 1, 2010

through February 22, 2015, SANTA ROSA experienced 18 surface discharges from its sewer lines, which are point sources under the CWA, in violation of the following:

a.  Order No. R1-2006-0045, Discharge Prohibition III. A: "The discharge of any waste not disclosed by the Discharger or not within the reasonable contemplation of the Regional Water Board is prohibited.";

b.  Order No. R1-2006-0045, Discharge Prohibition III B: "Creation of (a) pollution, contamination, or nuisance, as defined by CWC Section 13050 is prohibited.";

c.  Order No. R1-2006-0045, Discharge Prohibition III D: "The discharge or reclamation of untreated or partially treated waste (receiving a lower level of treatment than described in Section II.A of the Fact Sheet) from anywhere within the collection, treatment, or disposal facility is prohibited, except as provided for in Prohibition III.E and in Attachment D, Standard Provision G (Bypass Provision).";

d.  Order No. R1-2006-0045, Discharge Prohibition III. E: "Any sanitary sewer overflow (SSO) that results in a discharge of untreated or partially treated wastewater to (a) waters of the State, (b) groundwater, or (c) land that creates a pollution, contamination, or nuisance as defined in CWC section 13050(m) is prohibited.";

e.  Order No. R1-2006-0045, Discharge Prohibition III. G: "The discharge of waste at any point not described in Finding II.B or authorized by any State Water Board or other Regional Water Board permit is prohibited.";

f.  Order No. R1-2013-0001, Discharge Prohibition III. A: "The discharge of any waste not disclosed by the Permittee or not within the reasonable contemplation of the Regional Water Board is prohibited.";

g.  Order No. R1-2013-0001, Discharge Prohibition III. B: "Creation of pollution, contamination, or nuisance, as defined by section 13050 of the California Water Code (Water Code) is prohibited.";

h.  Order No. R1-2013-0001, Discharge Prohibition III. D: "The discharge or

reclamation use of untreated or partially treated waste (receiving a lower level of treatment than described in section II.A of the Fact Sheet) from anywhere within the collection, treatment, or disposal systems is prohibited, except as provided for in section IV.C.2 (Reclamation Specifications) and in Attachment D, Standard Provisions G (Bypass) and H (Upset).";

i. Order No. R1-2013-0001, Discharge Prohibition III. E: "Any sanitary sewer overflow (SSO) that results in a discharge of untreated or partially treated wastewater to (a) waters of the State or (b) land that creates pollution, contamination, or nuisance, as defined in Water Code section 13050(m) is prohibited."; and,

j. Order No. R1-2013-0001, Discharge Prohibition III. G: "The discharge of waste at any point not described in Finding II.B of the Fact Sheet or authorized by a permit issued by the State Water Resources Control Board (State Water Board) or another Regional Water Board is prohibited, except for use for fire suppression.".

51. The violations of SANTA ROSA as identified in all Claims for Relief are ongoing and will continue after the filing of this Complaint. RIVER WATCH alleges herein all violations which may have occurred or will occur prior to trial, but for which data may not have been available or submitted or apparent from the face of the reports or data submitted by SANTA ROSA to the RWQCB or to RIVER WATCH prior to the filing of this Complaint. RIVER WATCH will amend this Complaint if necessary to address SANTA ROSA's State and Federal violations which may occur after the filing of this Complaint. Each of SANTA ROSA's violations is a separate violation of the CWA.

52. RIVER WATCH avers and believes and on such belief alleges that without the imposition of appropriate civil penalties and the issuance of appropriate equitable relief, SANTA ROSA will continue to violate the CWA as well as State and Federal standards with respect to the enumerated discharges and releases set forth in all Claims for Relief herein. RIVER WATCH avers and believes and on such belief alleges that the relief requested in this Complaint will redress the injury to RIVER WATCH and its members, prevent future injury, and

protect their interests which are or may be adversely affected by SANTA ROSA's violations of the CWA, as well as other State and Federal standards.

## VIII.   PRAYER FOR RELIEF

RIVER WATCH prays this Court grant the following relief:

1.    Declare SANTA ROSA to have violated and to be in violation of the CWA;

2.    Issue an injunction ordering SANTA ROSA to immediately operate its Subregional Water Reclamation System, including its wastewater treatment plant and associated wastewater collection system in compliance with the CWA;

3.    Order SANTA ROSA to perform the following remedial measures:

   a.    The repair or replacement, within five (5) years, of all sewer lines in SANTA ROSA's wastewater collection system located within two hundred (200) feet from surface waters, which have been inspected via closed circuit television (CCTV) within the past ten (10) years and were rated as Significantly Defective under the Pipeline Assessment and Certification Program ("PACP") rating system or given a comparable assessment;

   b.    A Surface Water Condition Assessment, by way of CCTV, within two (2) years, of sewer lines in SANTA ROSA's wastewater collection system located within two hundred (200) feet of surface waters, which have not been CCTV'd within the past ten (10) years;

   c.    Within five (5) years after completion of the Surface Water Condition Assessment:

      i.    The repair or replacement of all sewer lines in SANTA ROSA's wastewater collection system which have been found to be Significantly Defective under the PACP rating system;

      ii.   The repair or replacement of sewer pipe segments containing defects with a rating of 4 based on the PACP rating system, if such defect resulted in a SSO, or, if SANTA ROSA determines such defects are in close proximity to Significantly Defective segments that are in the process of being

repaired or replaced; and,

    iii.    SANTA ROSA shall ensure that sewer pipe segments that contain defects with a rating of 4 based on the PACP rating system that are not repaired or replaced within five (5) years after completion of the Surface Water Condition Assessment are re-CCTV'd not more than every five (5) years to  ascertain the condition of the sewer line segment. If SANTA ROSA determines that the grade-4 sewer pipe segment has deteriorated and needs to be repaired or replaced, SANTA ROSA shall complete such repair or replacement within five (5) years after the last CCTV cycle;

d.    Beginning no more than one (1) year after completion of the Surface Water Condition Assessment, the commencement of a Full Condition Assessment by way of CCTV inspection of all sewer lines in SANTA ROSA's wastewater collection system not within 200 feet of a surface water, to be completed within seven (7) years.  Any sewer pipe segment found to be Significantly Defective under the PACP rating system to be repaired or replaced within five (5) years of the rating determination;

e.    Implementation in SANTA ROSA's Capital Improvements Plan of a program to provide a Condition Assessment of all sewer lines at least every seven (7) years. Said program to begin one (1) year following the Full Condition Assessment described above;

f.    Modification of SANTA ROSA's Backup and SSO response plan to include the method or calculations used for estimating total spill volume, spill volume that reached surface waters and estimating spill volume recovered.  For Category I Spills, creation of a listing of nearby residents or business owners who have been contacted to attempt to establish the SSO start time, duration, and flow rate, if such start time, duration, and flow rate have not been otherwise reasonably ascertained (such as from a caller who provides information with a given time that the SSO began). Taking of photographs of the manhole flow at the SSO site using

the San Diego Method array, if applicable to the SSO; or other photographic evidence that may aid in establishing the spill volume;

g.   A requirement for water quality sampling and testing whenever it is estimated that fifty (50) gallons or more of untreated or partially treated waste water from a SSO enters surface waters. Constituents tested for to include: ammonia, fecal coliform, E. coli and a CAM-17 toxic metal analysis. SANTA ROSA shall collect and test samples from three (3) locations: the point of discharge, upstream of the point of discharge, and downstream of the point of discharge. If any of said constituents are found at higher levels in the point of discharge sample and the downstream sample than in the upstream sample, SANTA ROSA shall determine and address the cause of the SSO that enters surface waters, and employ the following measures to prevent future overflows:

   i.   If the SSO is caused by a structural defect, then immediately spot repair the defect or replace the entire line;

   ii.  If the defect is non-structural, such as a grease blockage or vandalism to a manhole cover, then perform additional maintenance or cleaning, and any other appropriate measures to fix the non-structural defect;

h.   The creation of website capacity to track information regarding SSOs; or, in the alternative, the creation of a link from SANTA ROSA's website to the CIWQS SSO Public Reports. Notification to all customers and other members of the public of the existence of the web based program, including a commitment to respond to private parties submitting overflow reports;

i.   Performance of human marker sampling on creeks, rivers, wetlands and areas of Santa Rosa Creek and the Laguna de Santa Rosa adjacent to sewer lines to test for sewage contamination from exfiltration;

j    Creation of a mandatory, private sewer lateral inspection and repair program triggered by any of the following events: transfer of ownership of the property if no inspection/replacement of the sewer lateral occurred within twenty (20) years

prior to the transfer; the occurrence of two (2) or more SSOs caused by the private sewer lateral within two (2) years; a change of the use of the structure served (a) from residential to non-residential use, (b) to a non-residential use that will result in a higher flow than the current non-residential use, and (c) to non-residential uses where the structure served has been vacant or unoccupied for more than three (3 )years; upon replacement or repair of any part of the sewer lateral; upon issuance of a building permit with a valuation of $25,000.00 or more; upon significant repair or replacement of the main sewer line to which the lateral is attached;

k.  Conduction of soil holding capacity and agronomic studies on all lands used by SANTA ROSA for the disposal of treated or partially treated wastewater, to ensure there will be no runoff of either wastewater or nutrients during use of reclaimed water for irrigation;

l.  SANTA ROSA will provide, for each site with which SANTA ROSA has an agreement to provide reclamation water, site specific information which confirms that reclamation water is applied at hydraulic and agronomic capacity rates;

m.  Records of inspections of reclamation sites will be included in SANTA ROSA's monthly self monitoring reports;

n.  For each pond that is within two hundred (200) feet of a surface water (measured from the closest portion of that pond to the surface water), SANTA ROSA shall install a minimum of three (3) monitoring wells between the pond and that adjacent surface water. The wells shall be sampled quarterly for fecal coliform, total nitrogen and phosphate;

o.  Performance of an annual mass balance analysis to calculate the amount of loss through leakage from each storage pond;

p.  Performance of a study to determine the cause of Total Coliform violations, said study to include an evaluation of the need to upgrade SANTA ROSA'S ultraviolet disinfection system; and,

q.   Performance of a study to determine the cause of Total Nitrogen violations, said study to include an evaluation of the effectiveness of SANTA ROSA'S nutrient offset program.

4.   Order SANTA ROSA to pay civil penalties of $37,500.00 per violation/per day for its violations of the CWA;

5.   Order SANTA ROSA to pay the reasonable attorneys' fees and costs of RIVER WATCH (including expert witness fees), as provided by 33 U.S.C. § 1365(d), and applicable California law; and,

6.   For such other and further relief as the court deems just and proper.

DATED: May 27, 2015                    _____

                                       JACK SILVER
                                       Attorney for Plaintiff
                                       CALIFORNIA RIVER WATCH

Complaint